UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

FILED 10 JUN 23 11:26USDC-ORP

DANNER, INC.,

                Plaintiff,

    v.

FOLEY & LARDNER, LLP,

                Defendant.

No. CV 09-1220-JE

OPINION AND ORDER

MOSMAN, J.,

On March 15, 2010, Magistrate Judge Jelderks issued Findings and Recommendation ("F&R") (#18) in the above-captioned case recommending that I GRANT plaintiff Danner's Motion to Remand (#9). Defendant Foley & Lardner, LLP ("Foley") filed a Motion to Reconsider Findings and Recommendation (#22), which was denied on April 6, 2010. Foley subsequently filed objections to the F&R (#31), and Danner responded (#32).

Upon review, I agree with Judge Jelderks's recommendation, and I ADOPT the F&R (#18) as my own opinion. I write separately to address the arguments Foley raises in light of a recently published case, *Davis v. Brouse McDowell, LPA*, 596 F.3d 1355 (Fed. Cir. 2010), which Judge Jelderks did not have an opportunity to address in his F&R and only briefly addresses in his order denying Foley's motion for reconsideration. (Order (#30).)

## DISCUSSION

### I.    Standard of Review

The magistrate judge makes only recommendations to the court, to which any party may file written objections. The court is not bound by the recommendations of the magistrate judge, but retains responsibility for making the final determination. The court is generally required to make a de novo determination of those portions of the report or specified findings or recommendation as to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, the court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the F&R to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). While the level of scrutiny under which I am required to review the F&R depends on whether or not objections have been filed, in either case, I am free to accept, reject, or modify any of the magistrate judge's F&R. 28 U.S.C. § 636(b)(1)(C).

### II.    "Arising Under" Jurisdiction

Federal district courts have exclusive jurisdiction over actions "arising under any Act of Congress relating to patents." 28 U.S.C. § 1338(a). Like federal question jurisdiction under 28 U.S.C. § 1331, jurisdiction under 28 U.S.C. § 1338(a) can be achieved in only one of two ways—when "federal patent law creates the cause of action" or when "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988). Danner's cause of action for negligence is unquestionably created by state law; therefore, the relevant issue is whether a substantial question of patent law "is a necessary element of one of [Danner's] well-pleaded claims." *See id.*

at 809.

In its objections to the F&R, Foley disputes Judge Jelderks' characterization of Danner's claims. Foley argues that Danner's single claim for negligence, as pleaded in the complaint, is actually several "claims," as that term is defined by the Supreme Court. And if there are, in fact, several claims in the complaint, then Foley argues that Judge Jelderks erred by determining that Danner's claim could be resolved in ways that do not involve questions of patent law. I address each argument in turn.

A.    *Claims and Theories*

In *Davis*, the Federal Circuit acknowledged that the plaintiff's claim arising from a failure to timely file a patent application "[did] not raise any issue of U.S. patent law." 596 F.3d at 1360. In that case, the court found jurisdiction based on a two-part analysis. First, the court concluded that Ms. Davis's complaint raised multiple "claims" for negligence—one for failure to timely file an international Patent Cooperation Treaty ("PCT") application, and another for negligence in "preparing and filing the U.S. applications." *Id.* Second, the court concluded that the "case within a case" doctrine applied to her negligence claims, and, therefore, the elements of her second negligence claim required her to prove that her invention would have been patentable under U.S. law but for her attorney's errors. *Id.* Because plaintiff's "theory of recovery place[d] the merits of the underlying patent prosecution directly at issue," her claim necessarily created a substantial question of patent law. *Id.* at 1361-62 (internal quotation and alteration omitted).

In distinguishing a "claim" for negligence from a "theory" of negligence, the court "broadly defined [a claim] as the aggregate of operative facts giving rise to a right enforceable by a court." *Id.* at 1360 (internal quotation omitted). The *Davis* court found it material that the

plaintiff alleged two different kinds of negligence related to two separate sets of patent applications. *Id.* at 1357-58, 1360. *Davis*'s holding does not break new ground; it applies the general pleading rule that "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." *See* Fed. R. Civ. P. 10(b). In other words, *Davis* stands for the unremarkable principle that, under certain circumstances, each patent application can be a separate transaction that arises out of a different set of operative facts.

In contrast to the claims in *Davis*, Danner's allegations of negligence arise from a common aggregate of operative facts and relate to the same transaction or occurrence—a single patent application. All of Danner's allegations seek to hold Foley liable for various procedural and consultative errors with respect to filing that patent, all of which were allegedly committed before the patent application was ever filed. Whether Foley's errors take the form of a failure to investigate deadlines, failure to docket a deadline, failure to act diligently, or failure to communicate and advise Danner adequately, these allegations implicate two enforceable rights, or theories of recovery for negligence. First, Danner seeks relief based on its right to receive a certain standard of representation from Foley, and, second, Danner seeks relief based on a right to a timely patent application.

With respect to the first theory, Danner must prove more than a mere failure of communication, diligence, or competence because the right to a standard of care is not enforceable in the absence of some harm. On the factual allegations of this particular case, the untimely application is the harm that makes Danner's right to communication, diligence, and competence enforceable. Danner's second theory, the right to relief for an untimely application, does not rest on an independent cluster of operative facts. Instead, this right is made enforceable

by a combination of legal negligence and an untimely application—in other words, the second

right is made enforceable by at least some portion of the aggregate facts that make the first right

enforceable. Stated another way, if Foley could prove that Danner's application was timely, Foley

would prevail against each of Danner's asserted rights without further proof. Similarly, if Foley

could prove that it had no reason to know the facts that made Danner's application untimely, for

example, that Foley had no reason to know the invention had been publicly disclosed, *see* 35

U.S.C. § 102(b), Foley could also prevail against both theories of recovery. This is in stark

contrast to the claims in *Davis*, in which proof of a timely-filed PCT application would not have

impacted recovery for negligence on the U.S. application, nor would proof of non-negligence on

the U.S. application have impacted recovery for a late-filed PCT application. For these reasons,

Danner's enforceable rights arise from a common aggregate of operative facts and constitute a

single "claim."

### B.    *Necessary and Substantial Issues of Patent Law*

If determining whether this case "arises under the laws of the Constitution and the United

States," were as simple as asking whether Danner's Complaint raises issues of patent law, then

this Court could have subject matter jurisdiction. There is no question that "patent law issues are

in the air." *See Clearplay, Inc. v. Abecassis*, 602 F.3d 1364, 1369 (Fed. Cir. 2010). But for

purposes of establishing federal jurisdiction, the Supreme Court asks not only whether a case

raises patent law issues, but also whether those issues are "substantial" and "necessary" to the

resolution of a plaintiff's claims. I agree with Judge Jelderks that the patent law questions in this

case are neither substantial nor necessary to resolve plaintiff's claims, as those terms are used by

the Supreme Court and the Federal Circuit.

In *Christianson*, the Supreme Court stated that "[t]he well-pleaded complaint rule . . . focuses on claims, not theories, and just because an element that is essential to a particular theory might be governed by federal patent law does not mean that the entire . . . claim 'arises under' patent law." 486 U.S. at 811 (internal citations omitted). Instead, "a claim supported by alternative theories in the complaint may not form the basis for § 1335(a) jurisdiction unless patent law is essential to each of those theories." *Id.* at 810.

In Oregon, a negligence action against an attorney is similar to other negligence actions. To prevail on a legal negligence claim, a plaintiff must prove: (1) duty of the attorney to the plaintiff; (2) breach of that duty; (3) causation; and (4) damages. *See Chocktoot v. Smith*, 571 P.2d 1255, 1257 (Or. 1977). With respect to the causation element, "a jury cannot award damages for plaintiff's loss unless it concludes that the negligence led to an unfavorable or less favorable outcome for plaintiff." *Id.* This analysis, which often requires the fact-finder to determine how the original lawsuit would have ended if the case had been properly litigated, has been referred to as a "suit within a suit" or a "case within a case." *Id.*; *see also Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld, LLP*, 504 F.3d 1262, 1269 (Fed. Cir. 2007). If the "case within a case" requires a plaintiff to prove that it would have prevailed on its underlying patent law claim, then the patent law question is considered a necessary element of plaintiffs' claim and the case arises under federal law. *Akin Gump*, 504 F.3d at 1269.

I recognize that a claim alleging that an attorney's malpractice rendered a patent invalid can raise substantial questions of patent law that would give rise to federal jurisdiction—if a plaintiff has to "prove or overcome invalidity" to establish his or her claim. *See Id.* at 1270. In fact, one of plaintiffs' theories—the theory that Foley's negligence caused Danner to lose its

infringement lawsuit—is a classic "case within a case" that raises questions of federal patent law. But the critical point is that not *all* of Danner's theories raise essential questions of patent law; Danner can prove at least one of its theories without having to prove or overcome invalidity. For example, Danner can prove causation by showing that it would not have paid certain attorney fees if Foley had identified and communicated that the patent application was untimely. This failure to communicate and advise Danner about patent law deadlines, if proven, could provide Danner a remedy regardless of whether the patent would ultimately have been found invalid on other grounds. Danner's damages and prayer for relief include a "refund" of the attorney fees it paid to Foley for the patent application, which does not implicate federal law. Because federal law is essential to some, but not all, of Danner's theories, the claim does not arise under federal patent law within the meaning of 28 U.S.C. § 1335(a).

To the extent Foley's standard of care is established by interpreting federal patent law deadlines, that question of federal law is not "substantial" for the reasons discussed in Judge Jelderks's F&R. (F&R (#18) 9-10); *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005) (holding, in the context of interpreting federal jurisdiction under 28 U.S.C. § 1331, that the Court has "shy[ed] away from the expansive view that mere need to apply federal law in a state-law claim will suffice to open the 'arising under' door," and confirming that substantial issues of federal law are those that "indicat[e] a serious federal interest in claiming the advantages thought to be inherent in a federal forum."). A contrary interpretation risks sweeping all legal malpractice cases involving a federal matter into federal court, despite the fact that legal malpractice is an area of the law traditionally handled by the states. *See Roof Technical Servs., Inc. v. Hill*, 679 F. Supp. 2d 749, 754 (N.D. Tex. 2010); *see*

*also Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 814 (1986) (concluding "that the presence of a claimed violation of [a federal] statute as an element of a state cause of action [was] insufficiently 'substantial' to confer federal-question jurisdiction" under 28 U.S.C. § 1331, and acknowledging that Supreme Court precedent "candidly recognize[s] the need for careful judgments about the exercise of federal judicial power in an area of uncertain jurisdiction."). The gravamen of this action "is [Foley's] failure to meet deadlines and communicate with [Danner]. Patent issues are merely floating on the periphery." *See Hill*, 679 F. Supp. 2d at 754.

Because Danner's well-pleaded complaint gives rise to only one claim for negligence based on multiple theories, and not all of those theories necessarily depend on a substantial question of patent law, this case does not "arise under" federal patent law within the meaning of 28 U.S.C. § 1338.

## CONCLUSION

For the reasons described in this opinion and Judge Jelderks's F&R, Plaintiff Danner, Inc.'s Motion to Remand (#9) is GRANTED.

IT IS SO ORDERED.

DATED this 22 day of June, 2010.

MICHAEL W. MOSMAN
United States District Court